IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **ERIC HEYWOOD POOKRUM, *et al.*,** | * | |
| Appellants, | * | |
| v. | * | Case No. RWT 13-cv-3117 |
| **BANK OF AMERICA, N.A.,** | * | |
| Appellee. | * | |

## MEMORANDUM OPINION

Appellants Eric Heywood Pookrum ("Pookrum") and Robbin Camille Johnson ("Johnson") appeal an October 3, 2013 Order by Bankruptcy Judge Wendelin I. Lipp that denied their Second Restated Joint Plan of Reorganization under Chapter 11 of the U.S. Bankruptcy Code. Appellee Bank of America, N.A. ("Bank of America") has moved to dismiss their appeal as moot. For the reasons that follow, Bank of America's motion will be denied, and the Bankruptcy Court's Order denying confirmation will be affirmed.

## BACKGROUND[1]

In 2005, Pookrum and Johnson received financing from Bank of America to engage in the construction of improved real property in Prince George's County, Maryland. ECF No. 1 at 2; ECF No. 5 at 1. According to Bank of America, the Appellants "defaulted on their payment obligations under the Subject Loan" on June 16, 2009, and Bank of America subsequently initiated foreclosure proceedings in January 2010. ECF No. 5 at 2. Bank of America made a claim against the Appellants for more than $1.5 million. ECF No. 1 at 2. On September 10, 2010, Pookrum and Johnson filed for relief under Chapter 11 of the U.S. Bankruptcy Code. ECF No. 1 at 2.

---
[1] Much of this factual recitation comes from the Order of this Court dated October 24, 2013. *See* ECF No. 6.

Following a number of filings and proceedings before the Bankruptcy Court, the Appellants filed a Second Restated Chapter 11 Plan on July 12, 2013. ECF No. 1 at 4. At a hearing on September 25, 2013, the Bankruptcy Court considered the plan, ECF No. 1 at 4, and on October 3, 2013, Bankruptcy Judge Lipp entered an Order denying confirmation of Debtors' Second Restated Chapter 11 Plan without leave to amend, ECF No. 4-8. The Appellants filed an appeal to this Court on October 8, 2013. ECF No. 1 at 4.

On October 10, 2013, Pookrum and Johnson filed in the Bankruptcy Court an Emergency Motion to Stay the October 3rd Order pending their appeal. ECF No. 1-3. The Bankruptcy Court held a hearing on this Emergency Motion on October 16, 2013, Bankr. Docket No. 218, at the conclusion of which Judge Lipp rendered a comprehensive and detailed oral ruling denying the Emergency Motion to Stay. Judge Lipp entered a written Order on October 21, 2013 formally denying the Emergency Motion to Stay. ECF No. 1-11. On that same day, October 21, 2013, Pookrum and Johnson filed in this Court an Emergency Motion to Stay the October 3rd Order pending their appeal. ECF No. 1. Upon consideration of the Appellants' motion and Bank of America's Opposition, and having reviewed a recording of the proceedings before Judge Lipp on October 16, 2013, this Court found insufficient grounds to grant the Appellants' motion. On October 24, 2013, this Court entered an Order denying the Appellants' Emergency Motion to Stay. ECF No. 6.

On October 28, 2013, Judge Lipp entered an Order granting a motion by the United States Trustee to convert the Appellants' bankruptcy case from Chapter 11 to Chapter 7 pursuant to 11 U.S.C. § 1112(b). ECF No. 15-3. This Order was not appealed by the Appellants.

Pookrum and Johnson filed their brief in support of their appeal of Judge Lipp's October 3, 2013 Order on November 29, 2013. ECF No. 12. Bank of America filed its appellate brief on December 24, 2013. ECF No. 16. Before it filed its appellate brief, however, Bank of

2

America filed a Motion to Dismiss this appeal as moot. ECF No. 15. Appellants responded in opposition on January 2, 2014, ECF No. 19, and Bank of America replied on January 17, 2014, ECF No. 22. There is also a pending Motion to Strike the Appellee's Designation of Record on Appeal, ECF No. 13, which Bank of America opposed on December 16, 2013, ECF No. 14. This Court held a hearing on these motions and the merits of the Appellants' appeal on April 29, 2014.

## STANDARD OF REVIEW

On appeal from the bankruptcy court, the district court acts as an appellate court and reviews the bankruptcy court's findings of fact for clear error and conclusions of law de novo. *See In re Taneja*, 743 F.3d 423, 429 (4th Cir. 2014); *In re Travelstead*, 250 B.R. 862, 867 (D. Md. 2000). "Factual findings are 'clearly erroneous when although there is evidence to support [them], the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Bulmer v. Bulmer*, Civil No. WDQ-13-1578, 2014 WL 823659, at *4 (D. Md. Fed. 28, 2014) (quoting *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985)). "[D]*e novo* review entails consideration of an issue as if it had not been decided previously." *Stone v. Instrumentation Lab. Co.*, 591 F.3d 239, 246 (4th Cir. 2009) (quoting *United States v. George*, 971 F.2d 1113, 1118 (4th Cir. 1992)).

## ANALYSIS

### I. Mootness

Bank of America asserts that Pookrum and Johnson's appeal should be dismissed as moot because their bankruptcy proceedings have been converted from Chapter 11 to Chapter 7, and "effective relief cannot be provided to the Appellants because confirmation of a chapter 11 plan is no longer relevant in a Chapter 7 proceeding, which is a liquidation chapter." ECF No. 15 at 3. The Appellants argue that because it is possible for the Court to fashion relief for them, the appeal is not

3

moot. For the reasons set forth below, the Court agrees with the Appellants that the instant appeal is not moot, and will therefore proceed to analysis of the merits.

### A. Constitutional and Equitable Mootness

Generally, there are two types of mootness in bankruptcy appeals: constitutional and equitable. *See Mac Panel Co. v. Virginia Panel Corp.*, 283 F.3d 622, 625 (4th Cir. 2002). "The constitutional doctrine of mootness arises from Article III's jurisdictional 'case or controversy' requirement" and is "characterized by [the court's] 'inability to alter the outcome'" of a case. *In re Carr*, 321 B.R. 702, 706 (E.D. Va. 2005) (quoting *Matter of UNR Indus., Inc.*, 20 F.3d 766, 769 (7th Cir. 1994)). Equitable mootness, by contrast, "is a pragmatic principle, grounded in the notion that, with the passage of time after a judgment in equity and implementation of that judgment, effective relief on appeal becomes impractical, imprudent, and therefore inequitable." *Mac Panel Co.*, 283 F.3d at 625.

Constitutional mootness is jurisdictional. *See Townes v. Jarvis*, 577 F.3d 543, 546-47 (4th Cir. 2009) ("[t]he doctrine of mootness constitutes a part of the constitutional limits of federal court jurisdiction" (internal quotation marks and citation omitted)). Equitable mootness, however, is invoked by courts when, for practical reasons, they are able, but "*unwilling*[] to alter the outcome." *Matter of UNR Indus.*, 20 F.3d at 769. The Fourth Circuit has applied the equitable mootness doctrine in the bankruptcy appeals setting:

> [D]ismissal of an appeal on equitable mootness grounds is required when implementation of the [Chapter 11] plan has created, extinguished or modified rights, particularly of persons not before the court, to such an extent that effective judicial relief is no longer practically available. The court should reach a determination upon close consideration of the relief sought in light of the facts of the particular case.

*Central States, Southeast & Southwest Areas Pension Fund v. Central Transport, Inc.*, 841 F.2d 92, 96 (4th Cir. 1988) (internal citations omitted).

Bank of America argues that the appeal of the denial of confirmation in the Chapter 11 proceeding is irrelevant to the debtors' proceeding under Chapter 7, and that the case is thus moot. Mot. to Dismiss, ECF No. 15 ("MTD") at 3. Its argument discusses the lack of a case or controversy, but it does not distinguish between constitutional and equitable mootness. *Id.*

Pookrum and Johnson's argument is based on constitutional mootness; they rely on the well-accepted proposition that "[t]he availability of [even] a partial remedy is sufficient to prevent a case from being moot." Opp. to Mot. To Dismiss, ECF No. 19 ("Opp.") at 2 (quoting *In re Halkas*, Civil Action No. 2006-2744, 2007 WL 187798, at *3 (D. Md. Jan. 22, 2007) (quotation marks and emphasis omitted)). At the hearing on April 29, 2014, Pookrum and Johnson argued that a remedy is available in the form of re-conversion to Chapter 11, and this Court finds their argument persuasive.

### B. The Appeal Is Not Constitutionally Moot

Though it is true that "conversion from one chapter to another generally moots an appeal taken from an order in the original chapter," *AmeriCredit Fin. Servs., Inc. v. Tompkins*, 604 F.3d 753, 755 (2d Cir. 2010), this often refers to the equitable form of mootness. Conversion can render an appeal constitutionally moot, but the facts of such a case do not resemble those of this case. Appeals that are found constitutionally moot after conversion are typically the result of funds being dispersed, under a Chapter 11 or 13 reorganization plan or a Chapter 7 liquidation, to people or entities that are not parties to the case. *See e.g.*, *In re Carr*, 321 B.R. 702, 706 (E.D. Va. 2005) (holding that appeal was constitutionally moot after funds were dispersed under Chapter 7 liquidation); *In re Halkas*, 2007 WL 187798, at *3 (finding that an appeal was constitutionally moot if it could be shown that funds were dispersed under a Chapter 13 plan). In these circumstances, a court lacks power to compel non-parties to return funds. *See In re Halkas*, 2007 WL 187798, at *3-4. When funds have been distributed only to parties, the issue is not constitutionally moot. *See*

5

*Spirtos v. Moreno*, 992 F.2d 1004, 1006-07 (9th Cir. 1993) (court could fashion effective relief by ordering a party "to return . . . money to the estate").

Here, there is no indication that funds have been distributed to outside entities not a party to the appeal.[2] Because the Appellants' request for relief requires re-conversion to Chapter 11, the next question is whether re-conversion to Chapter 11 from Chapter 7 (after the proceeding originated in Chapter 11) is within the Court's power. The Bankruptcy Code addresses the question of re-conversion:

> (a) The debtor may convert a case under [chapter 7] to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112,[3] 1208, or 1307 of this title. Any waiver of the right to convert a case under this subsection is unenforceable.
>
> (b) On request of a party in interest and after notice and a hearing, the court may convert a case under [chapter 7] to a case under chapter 11 of this title at any time.
>
> (c) The court may not convert a case under [chapter 7] to a case under chapter 12 or 13 of this title unless the debtor requests or consents to such conversion.
>
> (d) Notwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter.

11 U.S.C. § 706.

There is no dispute that Section 706(a) "grants the absolute right to convert if no prior conversion has taken place." *In re Sensibaugh*, 9 B.R. 45, 46 (Bankr. E.D. Va. 1981) (citing S. Rep. 95-989, at 94 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5880). However, courts are divided as to whether subsection (b), at issue in this case, or subsection (c) allow the court to re-convert a case after it has previously been converted. *See Advanced Control Solutions, Inc. v. Justice*, 639 F.3d 838, 841 n.3 (8th Cir. 2011) (noting courts are split on the matter but refraining from considering the issue). It seems that only a few bankruptcy courts in the Fourth Circuit have addressed whether

---

[2] If the debtors' real property in this case is sold during the pendency of this appeal, Appellants admit that the appeal will likely be constitutionally moot. Opp. to Mot. To Dismiss, ECF No. 19 at 5.

[3] This case was converted to Chapter 7 from Chapter 11 under Section 1112. ECF No. 15-3.

6

Section 706 permits re-conversion, and none addresses conversion from Chapter 11 to 7 then back to 11. *See, e.g.*, *In re Sensibaugh*, 9 B.R. at 46 (§ 706 permits re-conversion by court; Chapter 11 to 7 to 13); *In re Offer*, No. 05-14122C-7G, 2006 WL 995858, at *2 (Bankr. M.D.N.C. Feb. 27, 2006) (agreeing that § 706 permits re-conversion by court, but "conclud[ing] that re-conversion should not be allowed under the circumstances of [the] case;" Chapter 13 to 7 to 13).

The reasoning of *Sensibaugh* is consistent with others that read Section 706 as permitting re-conversion, often by reference to the legislative history of the statute.[4] *See, e.g.*, *In re Masterson*, 141 B.R. 84, 87-88 (Bankr. E.D. Pa. 1992) (Chapter 11 to 7 to 13). The opposing view reads the statute as completely barring re-conversions. *See, e.g.*, *In re Bryan*, 109 B.R. 534, 534 (Bankr. D.D.C. 1990) (Chapter 11 to 7 to 13); *In re Hanna*, 100 B.R. 591, 592-94 (Bankr. M.D. Fla. 1989) (Chapter 13 to 7 to 13).[5]

Based on the plain text of the statute and interpretations by other courts, this Court finds that Section 706(b) gives courts the discretion to convert a Chapter 7 case to Chapter 11, even if a prior conversion already took place. While prior conversion takes away the debtor's absolute right to conversion under Section 706(a), the language of Section 706(b) clearly vests courts with discretion to "convert a case under [chapter 7] to a case under chapter 11 of this title *at any time*." 11 U.S.C. § 706(b) (emphasis added). Because re-conversion is a possible mechanism for relief in this case, the appeal is not constitutionally moot.

---

[4] The Senate Report on the Bankruptcy Reform Act of 1978 discusses Section 706:

> Subsection (a) of this section gives the debtor the one-time absolute right of conversion of a liquidation case to a reorganization or individual repayment plan case. If the case has already once been converted from Chapter 11 or 13 to Chapter 7, then the debtor does not have that right. The policy of the provision is that the debtor should always be given the opportunity to repay his debts, and a waiver of the right to convert a case is unenforceable.
>
> Subsection (b) permits the court, on request of a party in interest and after notice and a hearing, to convert the case to Chapter 11 at any time. The decision whether to convert is left in the sound discretion of the court, based on what will most inure to the benefit of all parties in interest.

S. Rep. 95-989, at 94 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5880.

[5] The Court notes that these cases focus mainly on an interpretation of § 706(c).

7

### C. The Appeal Is Not Equitably Moot

Bank of America argues that the appeal of the Bankruptcy Court's denial of confirmation in Chapter 11 is now irrelevant to the debtors' Chapter 7 proceedings. However, if the proceeding were to be re-converted to Chapter 11, the matter on appeal would still be relevant. The Fourth Circuit discussed its approach to equitable mootness in its 2002 *Mac Panel* opinion:

> Because the doctrine of equitable mootness is based on practicality and prudence, its application does not employ rigid rules. Rather, a court must determine whether judicial relief on appeal can, as a pragmatic matter, be granted. Factors in making this determination include (1) whether the appellant sought and obtained a stay; (2) whether the reorganization plan or other equitable relief ordered has been substantially consummated; (3) the extent to which the relief requested on appeal would affect the success of the reorganization plan or other equitable relief granted; and (4) the extent to which the relief requested on appeal would affect the interests of third parties.

*Mac Panel Co v. Virginia Panel Corp.*, 283 F.3d 622, 625 (4th Cir. 2002). Emphasizing "the equitable nature of bankruptcy judgments," the Fourth Circuit requires analysis of these factors while "considering the totality of [the] circumstances." *Mac Panel*, 283 F.3d at 625.

The first factor looks at whether a stay of the effect of the judgment was sought and obtained. The Appellants in this case sought and failed to obtain a stay from both the Bankruptcy Court and this Court. Second, it does not appear that the equitable relief has been "substantially consummated." In cases where these factors were applied to Chapter 7 liquidation proceedings, the relief was deemed substantially consummated when the funds had been fully distributed. *See In re Carr*, 321 B.R. at 708; *In re Mitrano*, No. 1:12cv1287 (LMB/IDD), 2013 WL 427900, at *6 (E.D. Va. Feb. 4, 2013). Here, the property is in the hands of a trustee who is in the process of selling it, but as far as the Court is aware, it has not yet been sold. Absent significant irreversible action, such as sale or distribution to entities not a party to the appeal, it appears that this relief has not been substantially consummated.

The third and fourth factors require consideration of whether the relief requested on appeal would "affect the success of the . . . equitable relief granted" or "the interests of third parties." *Mac Panel*, 283 F.3d at 625. This is not a case where "[a] significant amount of money was distributed and numerous promises were made based on the assumption that [the debtor] had successfully reorganized." *Id.* at 626. In this case, the real property in question has yet to be sold and funds have not been distributed. Considering all the factors and the totality of the circumstances, the appeal is not equitably moot. As such, the merits of the appeal will now be considered.

## II. Merits of the Appeal

On appeal, Pookrum and Johnson assert that the Bankruptcy Court erred by (1) denying their second Chapter 11 reorganization plan because it was not feasible, and (2) denying leave to amend the plan. Appellants' Br., ECF No. 12 at 1. The Court will consider each of these arguments in turn.

### A. Feasibility

Every Chapter 11 reorganization plan must be "feasible," such that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11); *see In re Travelstead*, 227 B.R. 638, 650-51 (D. Md. 1998). The court "should 'scrutinize the plan carefully to determine whether it offers a reasonable prospect of success and is workable.'" *Id.* at 651 (quoting *In re Monnier Bros.*, 755 F.2d 1336, 1341 (8th Cir. 1985)). "The purpose of section 1129(a)(11) is to prevent confirmation of visionary schemes which promise creditors and equity security holders more under a proposed plan than the debtor can possibly attain after confirmation." *Matter of Pizza of Hawaii, Inc.*, 761 F.2d 1374, 1382 (9th Cir. 1985) (quoting 5 *Collier on Bankruptcy* ¶ 1129.02[11] at 1129-34 (15th ed. 1984)); *see also In re Pikes Peak Water Co.*, 779 F.2d 1456, 1460 (10th Cir. 1985). "Success need

9

not be guaranteed," however – the plan must offer "a reasonable assurance of success." *In re Travelstead*, 227 B.R. at 651 (quoting *In re Johns-Manville Corp.*, 843 F.2d 636, 649 (2d Cir. 1988)). Furthermore, "[f]easibility is a factual question subject to the clearly erroneous standard of review." *Corestates Bank, N.A. v. United Chem. Technologies, Inc.*, 202 B.R. 33, 45 (E.D. Pa. 1996) (citing *In re Briscoe Enter., Ltd., II*, 994 F.2d 1160, 1166 (5th Cir. 1993)).

Pookrum and Johnson argue that the Bankruptcy Court "relied principally upon three months of operating reports" to conclude that they had insufficient means to execute their proposed plan, and that such reliance was in error because the reports "paint an incomplete picture of the Debtors' cash flow since they reflect a snap shot of net income at a particular period of time." Appellants' Br. at 6-8. Further, they argue, among other things, that the court should have given more weight to the testimony of Pookrum as to his $19,000 in outstanding accounts receivable, and that the court failed to properly consider $40,000 of cash in Johnson's bank account. Appellants' Br. at 6-9. The debtors also take issue with the court's findings (1) that Johnson made voluntary contributions to her retirement account instead of paying unsecured creditors, (2) whether the property is necessary for an effective reorganization, and (3) whether keeping the property is in their best interests. Appellants' Br. at 9-10. Bank of America counters that Judge Lipp properly considered the evidence before the court in concluding that the plan was not feasible, and that even if Judge Lipp had expressly relied on the prior monthly operating reports, they also show inadequate cash flow, making any error by the Bankruptcy Court harmless. Appellee's Brief, ECF No. 16 at 9-12.

Judge Lipp concluded that "the operating reports" and "the income and the testimony . . . do[] not support the cash flow" needed to support the proposed plan. Tr. at 106, ECF No. 16-7. She heard testimony from Pookrum concerning his accounts receivable, but was not sufficiently persuaded that those funds were available to support the plan. *Id.* Johnson's contributions to her

10

retirement account were also considered and found to be insufficient to make the plan feasible. *Id.* at 108-09. Judge Lipp was in a superior position to this Court to make determinations of fact. Neither the record of testimony nor the Appellants' brief have given this Court a sufficient reason to doubt Judge Lipp's factual conclusions. Furthermore, the operating reports that the Appellants claim were only partially considered by Judge Lipp do not support their proposed plan – whether considered in whole or in part. Appellants believe Judge Lipp improperly considered only the last three months of operating reports that were submitted prior to their second proposed reorganization plan. Appellants' Br. at 7. While these three months show an aggregate negative cash flow, the prior five months reflect an even more substantial negative cash flow. ECF No. 7-15, 7-18 – 7-21, 7-25, 7-26, 7-41, 7-54 – 7-61.

The Bankruptcy Court reasonably determined that the negative cash flow, as reflected in the operating reports, coupled with the unpersuasive testimony concerning other sources of income, did not support the Appellants' plan. It is the debtors' burden to persuade the court as to the feasibility of a Chapter 11 reorganization plan, *see In re DeLuca*, No. 95-11924-AM, 95-11893-AM, 1996 WL 910908, at *18 (Bankr. E.D. Va. Apr. 12, 1996), and that burden was clearly not met. It was reasonable for the Bankruptcy Court to conclude that the proposed plan was "too aspirational," Tr. at 109, and thus not feasible under Section 1129(a)(11).

Accordingly, the Court finds no clear error in the Bankruptcy Court's determination that the Appellants' second reorganization plan was not feasible. The Bankruptcy Court also denied confirmation for the plan's failure to provide proper tax payments to the Comptroller and IRS in accordance with 11 U.S.C. § 1129(a)(9)(C). Tr. at 106. Appellants admitted that their plan does not meet the requirement to pay these tax claims within five years of the date of the order for relief.

Appellants' Br. at 14.  Thus, even if this Court were to find error with the determination that the plan was not feasible, the Bankruptcy Court was correct to deny confirmation under Section 1129(a)(9)(C).

### B. Denial Without Leave to Amend

"[B]ankruptcy courts are given a great deal of discretion to say when enough is enough" when it comes to granting debtors the opportunity to amend Chapter 11 reorganization plans. *Matter of Woodbrook Associates*, 19 F.3d 312, 322 (7th Cir. 1994).  Here, the Bankruptcy Court gave Pookrum and Johnson "the benefit of time . . . [by allowing] Mr. Pookrum to become employed and have a source of income and propose a plan." Tr. at 106.  Despite the court's accommodating approach, the Appellants failed to propose a viable Chapter 11 plan for confirmation after more than three years.  Bankruptcy Courts may deny debtors the opportunity to submit additional Chapter 11 plans by dismissing or converting a case "if the debtor is unable to effectuate a plan" and "the estate creditors continue to suffer losses as a result of the delay." *Hall v. Vance*, 887 F.2d 1041, 1044 (10th Cir. 1989) (holding that the bankruptcy court properly dismissed debtor's case after eight months with no feasible plan); *see also In re Koerner*, 800 F.2d 1358, 1368 (5th Cir. 1986) (debtor's case converted for failure to submit a feasible plan after sixteen month period).  Judge Lipp reasonably exercised her discretion in denying leave to amend and the Court finds no abuse.

### III. Motion to Strike

Also pending before the Court is a Motion to Strike several items from the Appellee's designation of the record on appeal.  The Appellants argue, among other things, that the Court cannot consider its monthly operating reports because they were not admitted into evidence during the bankruptcy proceedings.  Mot. to Strike, ECF No. 13 ¶¶ 6-7.  Because the documents the Appellants seek to strike are part of the relevant record in this matter, *see In re Indian Palms*

*Associates*, 61 F.3d 197, 203-06 (3d Cir. 1995), and because the Appellants offer no authority in support of their motion, the Court will deny their Motion to Strike.

## CONCLUSION

For the reasons stated above, this Court will deny the Appellee's Motion to Dismiss, deny the Appellants' Motion to Strike, and affirm the decision of the Bankruptcy Court. A separate Order follows.

Date:  July 16, 2014

/s/
ROGER W. TITUS
UNITED STATES DISTRICT JUDGE